UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| VIRTUS INC., | Case No.   26-cv-1883 |
| Plaintiff, | |
| -against- | **COMPLAINT** |
| ORCHARD ENTERPRISES NY, INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff Virtus Inc. ("Plaintiff" or "Virtus"), by its attorneys, Reitler Kailas & Rosenblatt LLP, as and for its Complaint against defendant Orchard Enterprises NY, Inc. ("Orchard" or "Defendant") herein, alleges as follows:

### NATURE OF ACTION

1. Plaintiff brings this declaratory judgment and copyright infringement action in order to prevent Defendant from knowingly and willfully continuing to commercially exploit and distribute more than 300 sound recordings exclusively owned and controlled by Plaintiff (the "Recordings"), which Recordings are identified on Exhibit A hereto and embody the musical performances of the renowned Mexican band Los Temerarios – notwithstanding the expiration of the term of the parties' Digital Distribution Agreement on or about June 30, 2025 and the explicit termination of any implied license thereafter.

2. Defendant erroneously and falsely claims that the term of the parties' agreement has not expired and Defendant has continued to distribute the Recordings without authorization, approval or license from Plaintiff despite Defendant's receipt of a cease and desist letter from Plaintiff's counsel notifying Defendant of its wrongful infringement of Plaintiff's copyrights.

3. Defendant's refusal to acknowledge the termination of the parties' agreement and the termination of any implied license to distribute or exploit the Recordings, and its unauthorized post-termination exploitation and distribution of the Recordings, has caused Plaintiff significant and irreparable harm, requiring Plaintiff to bring this action to put a stop to Defendant's willful violation of Plaintiff's copyrights.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action under the copyright laws of the United States, 17 U.S.C. § 101 *et seq.*, and 28 U.S.C. §§1331 and 1338.

5. This Court also has jurisdiction over this action pursuant to 28 U.S.C. §1332(a) in that there is complete diversity of citizenship between the parties and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

6. Upon information and belief, this Court has personal jurisdiction over Defendant, a New York corporation with a regular and established principal place of business in this District.

7. The venue of this action is properly laid in the Southern District of New York pursuant to 28 U.S.C. §1400(a). Venue is also proper in this District pursuant to 28 U.S.C. §§1391(b)(1) and 1391(c)(2) because Defendant resides in this District.

8. Jurisdiction and venue in this District are also proper by reason of the venue clause contained in the parties' digital distribution agreement dated as of May 19, 2015, which provides that the "parties hereby grant to the U.S. District Court for the Southern District of New York, New York County, exclusive jurisdiction to hear any disputes arising out of or relating to this agreement; no action may be instituted in any other venue."

## PARTIES

9. Plaintiff is a corporation organized and existing under the laws of the State of

Florida with a principal place of business located in Miami Lakes, Florida.

10. Plaintiff owns and/or controls the Recordings identified on Exhibit A hereto.

11. Upon information and belief, Defendant is a corporation organized and existing under the laws of the State of New York with its principal place of business located at 23 East 4th Street, 3rd Floor, New York, New York 10003.

12. At all relevant times, Defendant was a music distribution company that distributes and delivers musical recordings to digital service providers ("DSPs") like Spotify and Apple Music, among others, for commercial exploitation on behalf of its clients in exchange for the payment of royalties.

## BACKGROUND

13. Plaintiff is the owner of various musical sound recordings, including without limitation, the Recordings identified in Exhibit A hereto.

14. The Recordings are sound recordings embodying the musical performances of Los Temerarios, a renowned Mexican band that is one of the most successful acts in Latin music with a discography that spans over four decades.

15. Upon information and belief, many of the Recordings were created at a time when Los Temerarios were subject to an exclusive recording agreement with their record label, AFG Sigma Records Inc. ("AFG").

16. Upon further information and belief, pursuant to the terms of such recording agreement, AFG owned the copyrights to the Recordings.

17. Upon further information and belief, AFG licensed the Recordings to Fonovisa Records ("Fonovisa"), a major Latin music label and affiliate of Universal Music Group.

18. Pursuant to a written assignment of copyrights dated effective as of June 7, 2008

(the "Copyright Assignment"), AFG assigned one hundred percent (100%) of its ownership, right, title and interest in and to certain of the Recordings to Plaintiff. A true and correct copy of the Copyright Assignment was recorded with the U.S. Copyright Office on or about February 11, 2026 under Document Number V15042D312.

19. Plaintiff is thus the owner of those of the Recordings identified in the Copyright Assignment, and the copyrights associated therewith, and has been since June 7, 2008.

20. Plaintiff thereafter merged with AFG, and Plaintiff became the successor in interest to all of the musical copyrights owned and/or controlled by AFG, including, without limitation, the copyrights in and to the remainder of the Recordings.

21. Upon information and belief, AFG and/or Fonovisa registered the SR copyrights in some of the Recordings and/or albums embodying the Recordings with the United States Copyright Office.

22. Plaintiff has also registered the SR copyrights in some of the Recordings and/or albums embodying the Recordings with the United States Copyright Office. In some cases, Plaintiff supplemented the copyright registrations previously filed by AFG and/or Fonovisa.

23. A list of the Recordings for which an SR copyright has been registered with the U.S. Copyright Office as of the date hereof (collectively, the "Registered Recordings") is annexed hereto as Exhibit B.

24. The SR copyright in each of the Registered Recordings identified on Exhibit B hereto was registered with the U.S. Copyright Office, either as a standalone sound recording or as part of an album. A true and correct copy of the U.S. Copyright Office's records reflecting the copyright registration of each of the Registered Recordings (or the Albums embodying such Registered Recordings) is annexed hereto as collective Exhibit C.

25. The copyrights in the Registered Recordings are currently valid and subsisting.

26. At all times prior to the commencement of this action, Plaintiff and its predecessors have fully complied with the statutory formalities governing copyrights with respect to the Registered Recordings.

### The Digital Distribution Agreement

27. Plaintiff and Defendant entered into a written digital distribution agreement dated as of May 19, 2015 (the "2015 Agreement") pursuant to which Plaintiff granted Defendant the "exclusive right to sell, copy, distribute, perform, sublicense and otherwise exploit" the Recordings in exchange for Defendant's agreement to account and pay royalties to Plaintiff after deducting its distribution fee.

28. Pursuant to the 2015 Agreement, Defendant paid Plaintiff an advance against future royalties to be earned by the Recordings.

29. The initial term of the 2015 Agreement was for a period commencing on May 19, 2025 and ending "on the last day of the calendar quarter which is five (5) years after the date of complete Delivery of the Catalog Recordings," provided that Defendant had the unilateral right to extend the term on a quarter-by-quarter basis until advances made by Defendant to Plaintiff were recouped and Plaintiff's account was in a positive position (the "Term").

30. Plaintiff duly and completely delivered the Catalog Recordings (as that term is defined in the 2015 Agreement) to Defendant.

31. Plaintiff and Defendant entered into a written amendment to the 2015 Agreement dated as of August 17, 2017 (the "2017 Amendment").

32. The 2017 Amendment did not alter the Term of the 2015 Agreement, but it did, among other things, provide for additional advances to Plaintiff.

33. Plaintiff and Defendant entered into a written amendment to the 2015 Agreement dated as of February 26, 2019 (the "2019 Amendment").

34. The 2019 Amendment, among other things, extended the Term of the 2015 Agreement "until the later of: (a) June 30, 2025, and (b) the end of the quarter-annual period during which all advances under the Agreement are fully and completely recouped."

35. The 2019 Agreement also provided for, and Defendant paid, a substantial additional advance to Plaintiff.

36. The 2015 Agreement was amended again pursuant to a written amendment agreement dated as of January 7, 2021 (the "2021 Amendment").

37. The 2021 Amendment did not alter the Term of the 2015 Agreement.

38. In or about May 2022, the parties began discussing the possibility of further amending the 2015 Agreement.

39. On May 2, 2022, Michelle Arnold, Orchard's then-Vice President, Business & Legal Affairs, sent a draft amendment agreement to Plaintiff's principal, Mayra Alba.

40. Paragraph 1 of the May 2, 2022 draft provided by Orchard proposed that the Term of the 2015 Agreement be extended "until the later of: (a) June 30, 2030, and (b) the end of the accounting period during which all advances under the Agreement are fully and completely recouped." (Emphasis in original.)

41. Later that same day, Ms. Alba provided comments to the draft amendment agreement, and in her mark-up, deleted the phrase "the later of" from paragraph 1 thereof.

42. On May 6, 2022, Ms. Arnold responded to Plaintiff's revisions by, among other things, re-inserting the phrase "the later of" into paragraph 1 and including language which would have provided for automatic renewals of the Term.

43. A few days later, on May 10, 2022, Ms. Arnold sent Ms. Alba another draft of the amendment agreement, which draft did not contain "the later of" language in paragraph 1 and which removed the reference to automatic renewals of the Term.

44. Following some negotiations regarding other terms, the parties thereafter executed the amendment to the 2015 Agreement dated as of May 10, 2022 (the "2022 Amendment").

45. Paragraph 1 of the 2022 Amendment states as follows:

> 1. **Extension of Term**.  Notwithstanding anything contained within the Agreement, the parties agree that the Term of the Agreement is hereby extended, without interruption, until: (a) June 30, 2030, and/or (b) the end of the accounting period during which all advances under the Agreement are fully and completely recouped.

46. Importantly, paragraph 1 of the 2022 Amendment did not have the "the later of" language that was present in the term extension provision of the 2019 Amendment.

47. The 2022 Amendment also provided for, and Defendant paid, a substantial additional advance to Plaintiff.

48. Paragraph 2(c) of the 2022 Amendment made clear that the Term of the 2015 Agreement could end prior to June 30, 2030 as it provides, in relevant part, that "[f]or the avoidance of doubt: (i) the Term of the Agreement will in no event end earlier than the end of the monthly accounting period during which all advances paid by Orchard (including, without limitation the May 2022 Advance) are fully and completely recouped…"

## The Term of the 2015 Agreement Expired On June 30, 2025

49. In or about May 2025, i.e., shortly before the end of the accounting period ending June 30, 2025, Plaintiff and Defendant exchanged emails regarding the Term of the 2015 Agreement.

50. On May 6, 2025, Jason Pascal, Orchard's then-EVP, Global Artist & Label

7

Partnerships, wrote to Ms. Alba as follows:

> Hi Mayra, our last agreement dated May 10, 2022 (attached), extended the term through June 30, 2030 and/or recoupment. In other words, recoupment alone doesn't end the term. Do you want to explore an extension beyond June 30, 2030? I have an idea that might be interesting, and could explore on my side.

51. Ms. Alba responded that same day, opposing Mr. Pascal's interpretation of the 2022 Amendment: "Actually [the] word 'or' gives the termination upon recoupment. So the extension makes sense now since the term won't go all the way to 2030."

52. Tucker McCrady of Orchard wrote to Plaintiff on May 22, 2025, reiterating Defendant's position that the Term of the 2015 Agreement would not terminate until June 30, 2030.

53. Plaintiff responded to Orchard acknowledging that the parties had differing interpretations of the 2015 Agreement, as amended, and suggested that the parties discuss a potential extension of the parties' relationship.

54. The parties thereafter discussed a potential extension of the parties' relationship on different financial terms than had previously been agreed to, but no amendment or new agreement was ever executed.

55. The substantial advances that Defendant paid to Plaintiff pursuant to the Agreement were fully and completely recouped in the accounting period ending June 30, 2025.

56. The full and complete recoupment of the advances was reflected on the royalty statements rendered by Defendant to Plaintiff for that accounting period.

57. Thus, pursuant to paragraph 1 of the 2015 Agreement, as amended, the Term of the 2015 Agreement – and Defendant's contractual right to right to sell, copy, distribute, perform, sublicense and otherwise exploit the Recordings – terminated on June 30, 2025.

**Post-Term Communications**

58. Following the termination of the Term of the 2015 Agreement, and based upon the parties' decade-long working relationship, Plaintiff and Defendant continued to discuss the possibility of permitting Defendant to continue its distribution of the iconic, and lucrative, Los Temerarios catalog.

59. By email dated December 1, 2025, Plaintiff reiterated its assertion and contention that the Term of the 2015 Agreement had terminated and conveyed a proposal to Defendant of commercial terms for Defendant to continue serving as Plaintiff's exclusive distribution partner for the Recordings.

60. In its December 1, 2025 email, Plaintiff noted that it had "generously offered a grace period to The Orchard, maintain the relationship uninterrupted while [the parties] explored a mutually beneficial renewal" but stated that any new agreement between the parties had to be finalized by December 31, 2025.

61. Later that same day, Mr. Pascal advised Plaintiff that it was still Defendant's position that the 2015 Agreement "remains active and enforceable through June 30, 2030".

**Defendant's Unlawful Acts**

62. Despite the termination of the Term of the 2015 Agreement and the termination of Plaintiff's grant of rights to Defendant with respect to the Recordings no later than December 31, 2025, Defendant has continued to sell, copy, distribute, perform, sublicense, and/or commercially exploit the Recordings after December 31, 2025 with no legal right or authorization to do so.

63. Upon information and belief, Defendant has financially benefitted from the distribution and commercial exploitation of the Recordings after December 31, 2025 in the range of millions of dollars.

64. Neither Plaintiff nor any agent on Plaintiff's behalf has granted any rights in the Recordings to Defendant after December 31, 2025 or otherwise consented to Defendant's use and/or distribution of the Recordings after that date.

65. To the contrary, Plaintiff has unequivocally objected to Defendant's use and/or distribution of the Recordings after December 31, 2025.

66. Defendant has infringed and continues to infringe Plaintiff's copyrights in the Registered Recordings by selling, copying, distributing, performing, and otherwise commercially exploiting the Registered Recordings, and/or authorizing others to do the same, without Plaintiff's authority or consent, in violation of 17 U.S.C. § 101 *et seq*.

67. By letter dated February 27, 2026, counsel for Plaintiff advised Defendant that the Term of the 2015 Agreement had ended as of June 30, 2025, that any post-Term implied license to Defendant to distribute or exploit the Recordings had previously expired or was terminated, and that Defendant no longer had the right to sell, copy, distribute, perform, sublicense and otherwise exploit the Recordings, and demanded that Defendant cease and desist from any further infringing conduct. A true and correct copy of the February 27, 2026 letter is annexed as Exhibit D hereto.

68. Notwithstanding the foregoing, Defendant has continued to sell, copy, distribute, perform, sublicense, and/or commercially exploit the Recordings, including the Registered Recordings, after February 27, 2026.

69. As of the date of the filing of this Complaint, Defendant has not ceased its infringing conduct or, upon information and belief, taken steps to remove the Recordings from DSP platforms.

70. Defendant has failed and/or refused to comply with Plaintiff's demands set forth in the February 27, 2026 letter, has continued to infringe Plaintiff's copyrights in the Registered

Recordings, and, upon information and belief, will continue to infringe Plaintiff's copyrights in the Registered Recordings unless enjoined by this Court.

71. Defendant's actions with respect to the Recordings are wrongful and willful.

72. Plaintiff has no adequate remedy at law.

## AS AND FOR A FIRST CLAIM
## COPYRIGHT INFRINGEMENT

73. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 72 above as if fully set forth herein.

74. Plaintiff is the owner of valid and subsisting copyrights in the Registered Recordings.

75. All of Defendant's acts and omissions set forth above were performed without the permission, license, authority or consent of Plaintiff.

76. Defendant's acts and omissions set forth above constitute acts of copyright infringement by Defendant of Plaintiff's copyrights in the Registered Recordings.

77. Defendant's infringements are willful and intentional inasmuch as Defendant was or should have been aware, and had reason to believe, that its acts constituted infringements of Plaintiff's copyright in the Registered Recordings.

78. As a result of the willful and intentional conduct hereinabove set forth, Plaintiff is entitled to a permanent injunction prohibiting any further sale, copying, distribution, performance, electronic transmission or other commercial exploitation of the Registered Recordings.

79. By reason of the foregoing, Plaintiff has been damaged in an amount to be determined at trial.

80. Plaintiff has suffered and will continue to suffer irreparable harm and injury as a result of the aforesaid infringing acts of Defendant.

81. Plaintiff has no adequate remedy of law.

## AS AND FOR A SECOND CLAIM
### DECLARATORY RELIEF PURSUANT TO 28 U.S.C. §§2201 *et seq.*

82. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 81 above as if fully set forth herein.

83. By reason of the foregoing, an actual and justiciable controversy of sufficient immediacy and reality has arisen and now exists between Plaintiff and Defendant with respect to their respective rights and obligations under the 2015 Agreement, as amended.

84. Plaintiff contends that the Term of the 2015 Agreement terminated on June 30, 2025, that the 2015 Agreement is no longer of any legal force or effect and is not binding upon Plaintiff, and that from and after June 30, 2025, Defendant had no express contractual right to sell, copy, distribute, perform, sublicense and otherwise exploit the Recordings.

85. Upon information and belief, Defendant contends that the Term of the 2015 Agreement did not terminate on June 30, 2025, that the 2015 Agreement is still in force and effect through June 30, 2030, and is binding upon Plaintiff, and that Defendant has the exclusive right to sell, copy, distribute, perform, sublicense and otherwise exploit the Recordings through June 30, 2030 pursuant to the 2015 Agreement, as amended.

86. Declaratory relief from this Court is necessary pursuant to the Declaratory Judgment Act, 28 U.S.C. §§2201 *et seq.*, so that the parties may know their respective rights and obligations with respect to the 2015 Agreement.

87. By reason of the foregoing, Plaintiff is entitled to a judgment declaring that the Term of the 2015 Agreement terminated on June 30, 2025, that the 2015 Agreement is no longer of any legal force or effect and is not binding upon Plaintiff, and that from and after June 30, 2025,

Defendant had no express contractual right to sell, copy, distribute, perform, sublicense and otherwise exploit the Recordings.

88. Plaintiff has no adequate remedy at law.

## JURY DEMAND

89. Pursuant to Fed. R. Civ. P. Rule 38(b), Plaintiff demands a trial by jury on all issues properly triable.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

A. On the First Claim,

   a. That Defendant be required to pay Plaintiff such actual damages as Plaintiff has sustained in consequence of Defendant's infringements of Plaintiff's copyrights in the Registered Recordings, and to account for and pay to Plaintiff all gains, profits and advantages derived by Defendant from its infringements of Plaintiff's copyrights in the Registered Recordings pursuant to 17 U.S.C. § 504, in an amount to be proven at trial, or such statutory damages as to the Court shall appear just as specified in 17 U.S.C. §504(c)(1), that is not more than One Hundred Fifty Thousand Dollars ($150,000.00) nor less than Seven Hundred and Fifty Dollars ($750.00) for each infringement of the Registered Recordings;

   b. That Defendant, its officers, agents and employees, and all persons acting in concert or participation with them, be enjoined both during the pendency of this action and permanently thereafter from copying, reproducing, distributing, publishing, electronically transmitting, or otherwise commercially exploiting the Registered

Recordings without authorization from Plaintiff, or otherwise infringing Plaintiff's copyrights in any manner, and from permitting, authorizing or causing others to do so; and

    c.    That Defendant be required to deliver up to be impounded and destroyed all copies of the Recordings and/or any derivative work thereof in Defendant's custody or control;

    B.    On the Second Claim, a declaratory judgment that the Term of the 2015 Agreement terminated on June 30, 2025, that the 2015 Agreement is no longer of any legal force or effect and is not binding upon Plaintiff, and that from and after June 30, 2025, Defendant had no express contractual right to sell, copy, distribute, perform, sublicense and otherwise exploit the Recordings;

    C.    Awarding Plaintiff its costs and disbursements incurred in prosecuting this action, including, but not limited to, its reasonable attorneys' fees pursuant to 17 U.S.C. § 505; and

    D.    Such other and further relief as this Court deems just and proper.

Dated: March 6, 2026

    REITLER KAILAS & ROSENBLATT LLP
    Attorneys for Plaintiff

By: /s/ *Brian D. Caplan*
    Brian D. Caplan
    Julie B. Wlodinguer
885 Third Avenue, 20th Floor
New York, NY 10022
Phone: (212) 209-3050
Fax: (212) 371-5500
bcaplan@reitlerlaw.com
jwlodinguer@reitlerlaw.com